(56 Misc. Rep. 278.)

PEOPLE ex rel. BARNEY v. WHALEN, Secretary of State of New York.

(Supreme Court, Special Term, Albany County. January, 1907.)

CORPORATIONS—INCORPORATION AND ORGANIZATION.

    General Corporation Law, Laws 1892, p. 1802, c. 687, § 5, provides that every certificate of incorporation shall be filed in the office of the Secretary of State and shall be by him duly recorded. Business Corporation Laws, Laws 1892, p. 2042, c. 691, § 2, provides that the certificate of incorporation shall contain the purpose for which it is to be formed, and that it may contain any other provision for the regulation of its business, and limitation of its powers not exempting them from any obligation imposed by law. Stock Corporation Law, Laws 1901, p. 314, c. 130, § 33, provides that a domestic corporation whose principal tangible property is located, and whose principal business is carried on, in an adjoining state, may, with the consent of 95 per cent. of its capital stock, sell its property situated without the state to a corporation organized under the laws of such adjoining state. *Held,* that a clause of articles of incorporation that the property of the proposed corporation might be sold to a foreign corporation with the consent of two-thirds of the capital stock was contrary to the policy of the state; and hence the Secretary of State was without authority to file the same and could not be compelled to do so by mandamus.

Application by the people, on the relation of Charles T. Barney, for a writ of mandamus against John S. Whalen, Secretary of State. Writ denied.

Affirmed in 104 N. Y. Supp. 555, and 82 N. E. 1131.

Davies, Stone & Auerbach, for relator.

William Schuyler Jackson, Atty. Gen. (Frank White, Deputy Atty. Gen., of counsel), for respondent.

BETTS, J. This is the return of an order to show cause why a peremptory writ of mandamus should not issue directing the respondent, as Secretary of State, to file, record, and index in his office the proposed certificate of incorporation signed by the said Charles T. Barney and two others for the incorporation of the Knickerbocker Building Company, under the business corporation law. The respondent, the Secretary of State, declines to receive and file the same because it contains the following provision: ·

"The directors may, with the consent of the holders of two-thirds of the capital stock issued and outstanding, sell, assign, transfer, or otherwise dispose of the whole of the property of the corporation, not including franchises, to any person or corporation, domestic or foreign"

—asserting that this provision is unauthorized by law.

A corporation is entirely the creature of the statute, so it becomes material to inquire as to the power and authority of the Secretary of State as to filing certificates of incorporation. Section 5 of the general corporation law (Laws 1892, p. 1802, c. 687), so far as material to the question here, is as follows:

"Every certificate of incorporation * * * shall be filed in the office of the Secretary of State, and shall be by him duly recorded and indexed in books specially provided therefor; and a certified copy of such certificate * * * with a certificate of the Secretary of State of such filing and record, or a duplicate original of such certificate * * * shall be filed and similarly re-

corded and indexed in the office of the clerk of the county in which the office of the corporation is to be located.  *  *  *"

The right to file certificates of incorporation in the office of the Secretary of State exists only in behalf of those who bring themselves within the terms of the act under which they seek to incorporate. People ex rel. Blossom v. Homer A. Nelson, Secretary of State, 46 N. Y. 477.

Examined in the light of that statute and the decisions thereunder, we find this relator and his associates attempting to incorporate under the business corporation law of which section 2 (Laws 1892, p. 2042, c. 691), so far as material, is as follows:

"Sec. 2. Incorporation.—Three or more persons may become a stock corporation for any lawful business purpose or purposes * * * by making, signing, acknowledging and filing a certificate which shall contain: * * * (2) The purpose or purposes for which it is to be formed. * * * (9) The certificate may contain any other provision for the regulation of the business. and the conduct of the affairs of the corporation and any limitation upon its powers and upon the powers of its directors and stockholders which does not exempt them from any obligation or from the performance of any duty imposed by law."

Hence it is important for the Secretary of State to inquire whether the makers of this certificate are attempting by it to evade the performance of any duty, or escape from any obligation imposed by law. The only provision of the statute that has been called to my attention which refers to the power of a corporation or a permission by the state to its creature, a corporation, to dispose of its entire property, is contained in section 33 of the stock corporation law. As originally passed, the stock corporation law contained no provision for the sale of practically the entire property of a corporation, but by chapter 638, p. 1436, Laws 1893, a qualified permission was given a stock corporation so to do, with the consent of two-thirds of its stock to a domestic corporation, by the creation of a new section of the stock corporation law known as "section 33." By chapter 130, p. 314, Laws 1901, section 33 was amended, so that the section then and now reads as follows:

"Sec. 33. Sale of Franchise and Property.—A stock corporation, except a railroad corporation and except as otherwise provided by law, with the consent of two-thirds of its stock, may sell and convey its property, rights, privileges and franchises, or any interest therein or any part thereof to a domestic corporation, engaged in a business of the same general character, or which might be included in the certificate of incorporation of a corporation organizing under any general law of this state for a business of the same general character, and a domestic corporation the principal business of which is carried on in, and the principal tangible property of which is located within a state adjoining the state of New York, may with the consent of the holders of ninety-five per centum of its capital stock, sell and convey its property situate without the state of New York, not including its franchises to a corporation organized under the laws of such adjoining state, and such sale and conveyance shall, in case of a sale to a domestic corporation, vest the rights, property and franchises thereby transferred, and in case of a sale to a foreign corporation the property sold in the corporation to which they are conveyed for the term of its corporate existence, subject to the provisions and restrictions applicable to the corporation conveying them. Before such sale or conveyance shall be made such consent shall be obtained at a meeting of the stockholders called upon like notice as that required for an annual meeting. If any stockholder not voting in favor of such proposed sale or conveyance shall at such meet-

ing, or within twenty days thereafter object to such sale, and demand payment for his stock, he may, within sixty days after such meeting, apply to the Supreme Court at any special term thereof held in the district in which the principal place of business of such corporation is situated, upon eight days' notice to the corporation, for the appointment of three persons to appraise the value of such stock, and the court shall appoint three such appraisers, and designate the time and place of their proceedings as shall be deemed proper, and also direct the manner in which payment for such stock shall be made to such stockholder. The court may fill any vacancy in the board of appraisers occurring by refusal or neglect to serve or otherwise. The appraisers shall meet at the time and place designated, and they or any two of them, after being duly sworn honestly and faithfully to discharge their duties, shall estimate and certify the value of such stock at the time of such dissent, and deliver one copy to such corporation, and another to such stockholder if demanded; the charges and expenses of the appraisers shall be paid by the corporation. When the corporation shall have paid the amount of such appraisal, as directed by the court, such stockholders shall cease to have any interest in such stock and in the corporate property of such corporation and such stock may be held or disposed of by such corporation."

It will thus be seen that, under regulations prescribed by the state, a domestic corporation whose principal tangible property is located within a state adjoining the state of New York, and the principal business of which is carried on in such adjoining state, may, with the consent of the holders of 95 per centum of its capital stock, sell and convey its property situated without the state of New York, not including its franchises, to a corporation organized under the laws of such adjoining state, vesting the rights and property sold in the corporation to which they are conveyed for the term of its corporate existence, subject to the provisions and restrictions applicable to the corporation conveying them. That is an altogether different authority from that attempted to be bestowed upon the corporation by the proposed certificate here. By the statute 95 per centum of the capital stock must agree to the sale to a foreign corporation in an adjoining state of the property belonging to the corporation located in that adjoining state, while, under the proposed certificate, conveyance may be made of the whole of its property to any foreign corporation with the consent of the holders of two-thirds of the capital stock.

It was held in People v. Ballard, 134 N. Y. 269, 32 N. E. 54, 17 L. R. A. 737, at the suit of the state for the benefit of certain minority, nonassenting stockholders, that as to them and as to the state the transfer by defendant trustees of all the property of a corporation, both real and personal, to a corporation organized under the laws of the state of California for the purpose of carrying on the business theretofore conducted by the defendant company and of taking title to the company's assets, although done with the approval of a majority of the stockholders, in good faith, was unauthorized and void. This was prior to the enactment of the original section 33 or its later amendment.

The powers attempted to be exercised in that action by the trustees of the corporation are practically the same as those sought to be authorized under this proposed certificate by the consent of two-thirds of the capital stock. Those claiming the right to the certificate of incorporation, including the provisions objected to by the Secretary of State, should show some statutory or other authority for so doing.

This has not been done. The relator relies largely on Francis v. Taylor, 31 Misc. Rep. 187, 65 N. Y. Supp. 28, affirmed in 52 App. Div. 631, 65 N. Y. Supp. 1133, on the opinion of the court below, which case, however, relates to the disposal of property of a voluntary or joint-stock association, and not of a corporation, and the court there is at much pains to show the difference between a corporation and a voluntary association, quoting for that purpose from People ex rel. Winchester v. Coleman et al., 133 N. Y. 279, 31 N. E. 96, 16 L. R. A. 183, where the distinction between the two classes of organizations— that is, of a joint-stock company and a corporation—is very clearly pointed out by Judge Finch, and in which case the court holds that a joint-stock association derives its existence from the contract of individuals, while a corporation does so from the sovereignty of the state. Corporations are governed by directors or trustees. The amended section 33 in a measure makes corporations and their property subject further to the control of 95 per centum of its capital stock where it is proposed to sell and convey certain of its property in an adjoining state to a foreign corporation organized under the laws of such adjoining state under certain conditions, which conditions are not provided for in this certificate offered for filing. The certificate submitted for filing here reduces that control to 66⅔ per centum, and gives that reduced number authority to sell the whole property of the corporation to any foreign corporation, thus greatly exceeding the statutory authority. If by inserting a provision like the one objected to in its articles of incorporation, and insisting that all present and future stockholders assent thereto by becoming stockholders, no matter what the circumstances under, or on what conditions, the sale of the whole property is to be made, any possible objection by its stockholders to such sale is rendered futile, then the corporation can plainly override the statute, and the articles of incorporation become superior to the statute under which the corporation proposes to organize.

The relator claims that there is no law in this state forbidding the transfer of the entire assets of a domestic corporation to a foreign corporation, and cites as authority for the proposition that the property of a domestic corporation can lawfully be so assigned or transferred to a foreign corporation, in addition to Francis v. Taylor, hereinbefore referred to, two Wilson Cases, one in 57 App. Div. 158, 68 N. Y. Supp. 173, and the other in 64 App. Div. 337, 72 N. Y. Supp. 150. In the first of these—Wilson v. Mechanical Orguinette Company—the only question presented at the Appellate Division was whether the defendant, a domestic corporation, could be held under its contract for goods manufactured and sold by a new corporation (which was a foreign corporation) to whom it had conveyed the greater portion or all of its assets, and the court held that the defendant was not so liable for goods manufactured and put upon the market by the new corporation, which decision was reversed in 170 N. Y. 542, 63 N. E. 550. In the other case of Wilson v. Æolian Company, and the Mechanical Orguinette Company, 64 App. Div. 337, 72 N. Y. Supp. 150, being the same plaintiff and the same defendant with the added foreign corporation, the court permitted the plaintiff, a creditor, to follow the proceeds of the transfer of the property from the Orguinette Company to the Æolian Company for the purpose of satisfying the claim

of the plaintiff for goods manufactured and sold by the Orguinette Company under a contract made with said Orguinette Company. The point of lack of authority in a domestic corporation to convey its entire property to a foreign corporation does not in either of these cases seem to have been directly raised or considered, and no right of non-assenting stockholders was there involved.

This brings us squarely to the point as to whether it is contrary to the policy of this state to organize corporations with a clause in their charters permitting them to sell their entire property to a foreign corporation otherwise than as provided by section 33 and practically go out of business within 10 days after commencing business under said certificate of incorporation. I am convinced that the organization of such a corporation would be opposed to its policy as disclosed by statute and decision. Corporations are organized for a term of years specified in each incorporation; the one in question here being for the term of 1,000 years. They are given certain privileges and immunities by the state entirely opposed to the theory that as to this state they can so speedily practically terminate their own existence at their own volition. As was so well said by Judge Vann in People v. Ballard et al., 134 N. Y. 294, 32 N. E. 59, 17 L. R. A. 737:

"A corporation is purely artificial, having no natural or inherent power, but only such as its charter confers. The charter of the corporation in question was the statute under which it was organized. Upon filing the certificate of incorporation, it came into existence with power to do only that which is expressly or impliedly authorized by the statute. It had no power to act except through its trustees, who were authorized to manage its stock, property and concerns, and a majority of whom were required to be citizens of this state. Laws 1848, p. 54, c. 40, as amended by Laws 1860, p. 471, c. 269. While they were authorized to conduct its affairs, they were not authorized to terminate its existence, although under special circumstances the courts could dissolve it upon their application. Code Civ. Proc. § 2419. A corporation cannot cease to exist of its own will. Its life continues until either the charter period has expired or the court has decreed a dissolution. The law made it, and the law only can put an end to it. As it cannot take its own life directly, it cannot do so indirectly, for that would be a fraud upon the law and against public policy."

I conclude that the Secretary of State is without legal authority to file the paper here offered; and the application for a peremptory writ of mandamus is therefore denied, with costs.